[No. 19463.    Department One.—July 21, 1894.]

## ABE N. KUMLER, APPELLANT, v. THE BOARD OF SUPERVISORS OF SAN BERNARDINO COUNTY, RESPONDENT.

CLASSIFICATION OF COUNTIES—CREATION OF NEW COUNTY—RECLASSIFICATION—DELEGATION OF POWER TO SUPERVISORS—CONSTITUTIONAL LAW.—Section 235 of the County Government Act, which provides that when the population of an existing county shall have been reduced, by reason of the creation of any new county from the territory thereof, below the class and rank first assumed under that act, it should be the duty of the board of supervisors of such county to designate by order the class to which such county has been reduced by reason thereof, is not in conflict with section 5 of article XI of the constitution, which requires the legislature to classify the counties by population, and does not delegate to the board of supervisors the power to classify counties; but simply in effect authorizes them to find out and determine, as a fact, how many people are left within the boundaries of the old county after the new county is created, and when this fact is found, which is not a legislative act, the classification follows as declared by the statute.

ID.—LOCAL OR SPECIAL LEGISLATION.—Section 235 of the County Government Act is not a local or special law, in conflict with section 25 of article IV of the constitution; but applies to every existing county of the state whose class is changed by having a portion of its territory detached and put in a new county.

ID.—POWER OF SUPERVISORS—DETERMINING POPULATION—FEDERAL CENSUS—CONSTRUCTION OF COUNTY GOVERNMENT ACT.—The board of supervisors, in determining what is the population of a county, out of the territory of which a new county has been organized, is not limited to an inquiry as to what was the population within its present boundaries as shown by the last federal census, notwithstanding sections 10 and 162 of the County Government Act make the census of 1890 controlling as to the classification of the several counties of the state as they then existed; and the language of section 235, in which no reference is made to the census, is to be construed as intentionally requiring the board to determine the population of the county as it existed at the time of the creation of the new county, and not its population as ascertained by the federal census.

APPEAL from a judgment of the Superior Court of San Bernardino County.

The facts are stated in the opinion of the court.

*Henry W. Nisbet,* for Appellant.

*Frank F. Oster,* and *Curtis, Oster & Curtis,* for Respondent.

The COURT.—The appellant made application to the court below for a writ of *certiorari*, to annul an order of the board of supervisors of San Bernardino county, reclassifying that county, and reading as follows:

" WHEREAS, by reason of the creation and organization of the county of Riverside, the population of the county of San Bernardino has been reduced below the class and rank of a county of the tenth class; and, whereas, the population of said county of San Bernardino is now over twenty-three thousand and under twenty-four thousand; now, therefore, it is hereby ordered by the board of supervisors of said county of San Bernardino that said county of San Bernardino has been reduced to and is a county of the twelfth class, and that the population of said county is now over twenty-three thousand and under twenty-four thousand."

The order was made on January 12, 1894, and it is alleged, upon information and belief, that the population of the territory then within the boundaries of the said county was in the year 1890, according to the federal census of that year, not greater than nineteen thousand; that the board in making the order disregarded and ignored the federal census and the population shown thereby, and attempted to classify the county on the basis of the population it contained when the order was made; and that in doing so the board exceeded its jurisdiction and acted without any authority of law.

A demurrer to the petition was interposed and sustained, and the petitioner declining to amend, judgment was entered dismissing the proceeding, from which he appeals.

The constitution, article XI, section 5, provides: "The legislature by general and uniform laws . . . . shall regulate the compensation of all such officers in proportion to their duties, and for this purpose may classify the counties by population."

And the County Government Act (Stats. 1893, p. 346) has the following provisions:

" SEC. 10. The several counties of this state are

hereby classified, and shall hereafter remain classified, according to their population, as ascertained by the federal census taken in the year eighteen hundred and ninety."

" SEC. 162.   For the purpose of regulating the compensation of all officers hereinbefore provided for, the several counties of this state are hereby classified, and shall hereafter remain classified, according to their population, as ascertained by the federal census taken in the year eighteen hundred and ninety as follows."

" SEC. 235.   When the population of any existing county shall have been reduced, by reason of the creation of any new county from the territory thereof, below the class and rank first assumed hereunder, it shall be the duty of the board of supervisors of such county to designate by order the class to which such county has been reduced by reason thereof, and such county shall thereafter enter the list of such class."

1. It is claimed for appellant that the section last quoted, under which the order in question was made, is in conflict with the section of the constitution quoted, because it delegates to the board of supervisors power which under the constitution can be exercised only by the legislature.   There is nothing in this point.   The section does not delegate, or attempt to delegate, to boards of supervisors the power to classify counties, but simply in effect authorizes and directs them to find out and determine how many people are left within the boundaries of the old county after the new county is created.   This is merely finding a fact, and is not a legislative act, and when found the classification follows as declared by the statute.   Nor is the said section of the statute in conflict with section 25 of article IV of the constitution, which provides that " the legislature shall not pass local or special laws . . . . affecting the fees or salary of any officer."   It is not a local or special law, for the reason that it applies to every existing county of the state whose class is changed by having a

portion of its territory detached and put into a new county.

2. It is further claimed that the board of supervisors, in determining what was the population of the county, was limited to an inquiry as to what was the population within its present boundaries in 1890, as shown by the federal census of that year.

It will be observed that sections 10 and 162 make the census of 1890 controlling as to the classification of the several counties of the state as they then existed, but in section 235 no reference is made to that census, and the action of the board is not expressly nor, as we think, impliedly limited thereby. The failure to so limit the action of the board must be treated as intentional, and it doubtless arose from the fact that in the cases provided for by the section it would often be difficult, if not impossible, to determine what was the census population in 1890, since the new boundary lines may not follow any township or precinct lines then established. (See *De Camp* v. *Eveland*, 19 Barb. 81.)

The same section provides for the classification of all newly created counties, and in *Sanders* v. *Sehorn*, 98 Cal. 227, a question as to the classification of the newly created county of Glenn was involved. In deciding the case it was said: " According to the County Government Act, the population of the various counties for the purposes of the act were to be determined from the last preceding federal census; but in the case of newly organized counties, especially when the boundary lines of the new county do not follow township lines, such census would not furnish the *data* contemplated, and for that reason the legislature, for the purpose of classification, would well declare the population of Glenn county to be over six thousand five hundred and under six thousand six hundred, receiving its information for such declaration from whatever source it saw fit." And again: "Glenn county came into existence as a county fully organized and equipped May 11, 1891; at that time, under the terms of the act creating it, as we have con-

strued that act, it had a population of more than six thousand five hundred, and less than six thousand six hundred, and consequently came within the limits prescribed for counties of the forty-first class."

This language plainly implies that the population of the county *at the time of its creation,* and not its population as ascertained by the federal census, was a proper basis upon which to determine its classification. The same rule must be held equally applicable to an old county under like conditions. It follows that the judgment appealed from must be affirmed; and it is so ordered.