No. 14,097.

A. D. McFARLAIN vs. TOWN OF JENNINGS.

### SYLLABUS.

1. In view of the special power expressly granted and the absence of legislative provision regarding enumeration required to enable a municipal corporation to enforce a grant of power, it is competent for the municipal authorities, by regular methods, to ascertain and make public the number of persons residents of the municipalities.

2. But the court will not assume that the statute has been complied with unless it be made to appear by sufficient and competent testimony obtained in some regular way that the number of the population was more than two thousand at the date that an ordinance was passed to enforce the power.

3. While deciding that the municipality has the power to ascertain the number, the court holds that the methods required were only followed after the plaintiff's injunction had been issued and not in time to affect the injunction.

4. The courts have the power to enjoin the enforcement of municipal ordinances

relating to public order and health, even though penal in their nature.    50
A. 521..

5.  · As relates ·" to irreparable injury," the allegations made the showing suffi-
cient, and the objection on the ground that it was not, is not sustained.

APPEAL from the Fifteenth · Judicial District, Parish of Calca-
sieu.—*Miller J.*

*Sompayrac '& Toomer,* for Plaintiff, Appellee.

*Cline & Cline,* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J.   The town of Jennings adopted an ordinance relating to
the running at large of stock within; the town.   We are informed by
the record that after it had been adopted, the Mayor had a census of
the town taken by his daughter, and the Council afterward ordained
a census to be taken by a census taker regularly appointed.   The
census made by the Mayor's daughter ' shows that the population of
Jennings was two thousand and four.   The census taken a short time
afterward by the census taker of the Council shows that two thousand
and thirty persons resided in Jennings between June 1st and 9th, 1901.

The Mayor and Council claiming that the number of inhabitants is
more than two thousand, seek to have the stock ordinance enforced.
In accordance with their order the cows of plaintiff were impounded.
and plaintiff obtained an injunction and claimed damages against
Jennings and its marshal.   The census of the United States shows that
the population of Jennings ' was fifteen hundred and thirty-nine in
1900.

The case was put at issue and tried. · Judgment was pronounced for
plaintiff sustaining his injunction and allowing him damages against
the town in the sum of sixty-five dollars.   Defendant appeals.·

: Manifestly; the legality of the ordinance in question depends upon
the extent to which the inhabitants can be held bound by the census
taken at the instance of the municipality of Jennings.   If that census
is to be taken as fixing the number of inhabitants, then the town has
at this time the required number to bring it within the scope of
Section 17, of Act 136 of 1898, which confers upon the Mayors and
Aldermen of cities and towns, having more than two thousand inhab-
itants, the power to prevent or to regulate the roaming at large of

animals and cause them to be impounded. (§ 4th, Sec. 17 of the cited Act above.).

If, on the other hand, the census of the United States is to be taken instead, as conclusive of the number in the town, then the Mayor and Aldermen have not, because of the insufficiency in number, the power to have stock impounded that are found roaming in the town.

Under the Governor's proclamation issued in the year 1900, in pursuance of the provisions of Act 136 of 1898, Jennings having the requisite number of one thousand inhabitants, is a town, that being the number necessary to its incorporation under that Act. The municipalities under the Act just cited are to be *classified* according to their population as shown by the United States' census; the class is changed in accordance with the provisions of the statute.

In Section 8 of this statute special authority is conferred upon the Governor in matter of *classification* when it shall be shown by reference to an Act of Congress or Legislature that the population of a city, town, or village has increased or diminished so as to take it out of the class to which it previously belonged. It is then made his duty, after proper investigation, to make a correct *classification* of the erroneously classified corporation. The authority of the Governor, it will be observed, is confined to *classification* of these corporations into cities, towns and villages. The law contemplates, evidently, *classifications* by the executive based upon the number required to constitute a city, town, or village, but no reference is made in the statute to any other *classification* by the executive or to ascertaining any other number except those needful to establish *classification* of the corporation into a village, town, or city.

Yet, without regard to classification by the Governor, certain powers are delegated to designated municipalities when the number of its members exceed two thousand, and among these powers is the power delegated to impound stock. But the statute does not expressly authorize and direct how to find out and determine how many persons are within the town when it seeks to enforce powers delegated to towns of more than two thousand inhabitants.

As relates to the ascertaining if in the town there are as many persons as just mentioned, no reference is made to a census whether by the United States or by the State. The statute is absolutely silent upon the subject. The question arises, should the number taken from the census be controlling, in the absence of statutory direction? If the

population can only be determined by the United States' census, it would result in not carrying the legislative will into effect. It might well occur that a town would have the requisite number and yet for a period of nine or more years the law would remain a dead letter. As the law reads at present, it contains no reference to a census, as relates to the special power in question, and we take it that without a special enactment the census is not exclusive of all other methods of ascertaining the number of members of a corporation.

It must, in some way, be ordered that the census of the United States be taken as a basis in determining the number of a municipality; and if we were to take the census as determining the question a town with two thousand inhabitants at this time would have to wait until the next census before attempting to exercise the power conferred, and even then it would require some legislation to render it possible to determine the number by reference to the census of the United States.

Recently, in another jurisdiction, it was held that the failure of the Legislature to point out a method to determine the number of persons should not be allowed to destroy the power granted. We quote: "In this case it is manifest that the provision can be determined by competent testimony outside of any legislative enactment;" that it was a question for the court to determine. State ex rel. Smith vs. Neal, Vol. 65, p. 188, Pacific Reporter.

In another case and regarding number of population, another court said: "It is manifest that the provision can be determined by competent testimony outside of any legislative enactment." Anderson vs. Whetcome Co., 33 L. R. A. 137. The same rule was sustained in Kumber vs. Boon, 37 P. 383.

In the first decision cited above, the court said regarding a question similar to the one here: "We think that in the case under discussion a rule is equally prescribed which is capable of enforcement. In this case the ascertainment of the amount of the population in the town or city is for the courts and not for the Legislature." In each of these cases it became necessary to establish the population of municipal corporations in which the law making power had failed to make provision for ascertaining the number of persons.

We do not go to the extent of holding that the question is not for the Legislature, and in that respect we do not agree with the cited cases, nor do we think that, as between a municipality and its members,

the number of the population may be ascertained as any other fact. There must be some regular method followed in ascertaining the number of the population. We think legislation is desirable to provide means for ascertaining the number of persons, but where a power is granted and the law-making power is silent, as in this case, it then becomes a question to be ascertained by a method usually followed in the course of municipal administration. We cannot agree with counsel for plaintiff and appellee that the census of the United States must be taken to determine the number of population of a town, and that the municipality is without authority in the premises. Having concluded as before stated as relates to the authority of the town to establish the number, we will ascertain if the municipality has complied with needful regulation to enforce the power.

But there must be an organized method followed by the municipality in determining the number, and this we have not succeeded in finding. It does not appear of record that the ordinance relating to the running at large of stock was made public by advertisement and no attempt was made to validate this ordinance after a census had been taken. No census was made or enumeration taken by the town prior to the filing of appellee's suit. We have noted that a young lady had taken a census. The record shows that she acted for the Mayor personally. There is no question but that she made every reasonable attempt to perform the puty. It remains that it was only a private census. Subsequently an ordinance was adopted and a census was taken, only, however, it is conceded, between the first and ninth of June, 1901, a number of days after the injunction had been issued. We think it was too late to affect any of the rights of the plaintiff and appellant. A corporation may ascertain the number of its population by following the methods it follows in all other proceedings affecting its members. We are convinced that this was not done prior to the institution of this suit.

We cannot agree with the proposition that an enumeration made within a month of the adoption of the ordinance enjoined and showing the required population is sufficient to establish the requisite number at the time of the adoption of the ordinance, if there be no evidence to the contrary. The fact should have been established and made public before attempting to enforce the ordinance.

The next contention of defendant and appellant is that the execution

of a municipal ordinance is not subject to injunction. We do not think there is any weight in this defense. Illegal ordinances may be enjoined. This was the purpose of the plaintiff in injunction. The fact that it relates to a public regulation does not add any strength to the contention. This question was considered and decided adversely to defendant and appellant in Lecourt vs. Gaster, 50 Ann. 521.

The next contention of appellant is that the irreparable injury, as alleged, was not imminent. We have not discovered good grounds to sustain this contention.

Plaintiff's property had been impounded and was to be disposed of had not an injunction been taken. This of itself presents an issue of possible irreparable injury sufficient to satisfy the court that there was good ground for the injunction.

For these reasons it is ordered, adjudged, and decreed, that the judgment appealed from be affirmed.