(90 South. 218)

No. 24438.

## STATE v. LETELLIER et al.

### In re BUSINESS MEN'S RACING ASS'N, Inc., et al.

(April 4, 1921. On Rehearing, Dec. 10, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Courts** ⊙⟹207(5)—**Supreme Court's supervisory jurisdiction is not controlled by statute.**

In the exercise of supervisory jurisdiction over inferior courts, conferred by Const. art. 94, the Supreme Court is not controlled by Code Prac. art. 845, providing that prohibition issues only to courts or inferior judges which exceed their jurisdiction.

2. **Courts** ⊙⟹207(5)—**Supervisory jurisdiction not exercised to prevent trial involving settled legal question.**

The supervisory jurisdiction of the Supreme Court cannot be exercised to prevent a criminal court from trying a case legally pending before it over which it has no jurisdiction, simply for the reason that the legal question therein involved has been passed on by the Supreme Court.

Monroe, C. J., and O'Niell, J., dissenting.

Original application for writ of prohibition by the State of Louisiana, on the relation of the Business Men's Racing Association and others, against A. B. Letellier and others. Application dismissed.

Walter L. Gleason, of New Orleans, for relators.

A. V. Coco, Atty. Gen., and Robert H. Marr, Dist. Atty., of New Orleans (T. Semmes Walmsley, of New Orleans, of counsel), for the State.

PROVOSTY, J. The relators are the Business Men's Racing Association and its officers. They obtained an injunction in the civil district court against the district attorney and the superintendent of police to prevent them from attempting to charge them with a violation of Act 57 of 1908, prohibiting gambling on horse races by the operation of betting books, French mutual pooling devices, auction pools, or any other device, and providing penalties for violation of the act. Disregarding this injunction, the district attorney filed information against the said officers in the criminal district court, division B, presided over by the respondent judge, and the criminal prosecutions were being proceeded with when the said relators filed in this court the present application for a writ of prohibition to be addressed to the respondent judge prohibiting him from proceeding further with said prosecutions.

The ground of the injunction was that such criminal prosecutions would injure the property rights of the petitioners, and would be unreasonable and arbitrary, as the question of whether the mode of betting on the race track of the relators was a violation of said statute had already been considered by the Supreme Court and decided in the negative.

The ground of the present application to this court is that the continuation of said criminal prosecution will be ruinous to the said Business Men's Racing Association, and that mere proceedings for contempt against the district attorney for violation of the said injunction would not afford adequate remedy, as in the meantime the irreparable injury to the relators would be done.

From the return of the learned respondent judge we transcribe as follows:

"Article 845 of the Code of Practice provides that a writ of prohibition 'only issues to courts of inferior judges which exceed the bounds of their jurisdiction.'

"Article 139 of the Constitution provides that: 'The criminal district court shall have exclusive original jurisdiction for the trial and punishment of all offenses when the penalty of death, imprisonment at hard labor or imprisonment without hard labor for any time exceeding six months, or a fine exceeding $300.-00 may be imposed.'

"Relators stand charged in respondent's court with an offense of which the criminal district court has exclusive trial jurisdiction. It is therefore plain that, so far as the trial of

relators is concerned, your respondent had jurisdiction.

"Therefore, if your respondent has exceeded the bounds of his jurisdiction, it must arise from some other cause than the nature of the offense charged, or, in other words, that though under the Constitution respondent had jurisdiction of the case, something has happened which has removed the case from your respondent's jurisdiction. The question then for you; honors to decide is in what way has your respondent exceeded the bounds of a jurisdiction which confessedly is lodged in him? What has happened to take away from your respondent the trial of the case, the right to try which is vested in him by the Constitution?

"Nothing is better settled than that the civil district court and the criminal district court is each a separate and independent tribunal, and each utterly without power to control in any way the action of the other; that when, therefore, one of these tribunals exceeds the bounds of its jurisdiction, the remedy lies only in the Supreme Court. It is respectfully submitted that relators have by their own allegations put themselves out of court. They confess that the civil district court is without authority to issue an injunction against your respondent, but they say that an issuance of an injunction by the civil district court against the district attorney is, in effect, an injunction against your respondent; in other words, they seek to make your honors believe that they believe that what cannot be directly accomplished can be accomplished by indirection. What relators seek to do is really to contrive a device for obtaining that which the law says they shall not, under any circumstances, obtain.

"Nothing is better settled than that no man is bound by proceedings to which he is a stranger. Your respondent was not made a party to the injunction sued out against the district attorney and the chief of police; hence he could under no circumstances be bound by the proceedings in that case.

"When it was moved before respondent that relators' trial should be continued until such time as the injunctions issued by the civil district court against the district attorney and the chief of police should have been disposed of, it was not urged that the jurisdiction of the criminal district court had been ousted by the issuance of an injunction; but, had such proposition been urged, respondent would have forthwith overruled it as being absolutely contrary to the Constitution of this state and to the settled jurisprudence of Louisiana.

"Your respondent is in no wise interested in any controversy that may be pending between relators and the district attorney, nor is it any concern of your respondent whether the district attorney has or has not been guilty of contempt of the injunction issued against him by the civil district court, but your respondent is vitally interested in preserving the dignity and usefulness of the court over which he presides, and he feels that to hold that an injunction against the district attorney ties up prosecutions in the criminal district court makes his court sink into not only an inferior tribunal, but into a tribunal in which the exercise of a jurisdiction conferred by the Constitution is taken away from him and lodged in a court having no jurisdiction in criminal matters.

"There are other rights to be protected than merely the alleged rights of property. The granting of the relief prayed for by relators would completely paralyze the administration of criminal justice, and could prevent the trial of the murderer, the forger, the embezzler, or the ravisher. If, upon the bare allegation that his property rights are involved in a prosecution which the district attorney contemplates bringing against him, such person has the right by means of an injunction issued by a civil court to prevent the judge of a criminal court from taking cognizance of any prosecution that might be instituted against this accused, then the administration of criminal justice becomes a lamentable farce. Such things cannot be. This matter was decided adversely to relators' pretensions in the matter of State ex rel. Walker v. Judge, 39 La. Ann. 132, 1 South. 437.

"Relators invoke the exercise of our supervisory jurisdiction through the writs of prohibition and certiorari, for the purpose of restraining the respondent judge and the district attorney of the parish of Orleans from proceeding further in certain criminal prosecutions instituted and pending in the criminal district court of said parish, for alleged violations of Act No. 18 of 1886, commonly known as the 'Sunday Law,' and of annulling the proceedings already had in said causes.

"The grounds assigned for the relief sought are twofold, viz.:

"(1) Because said criminal prosecutions were instituted in, and entertained by, the said criminal district court, in violation of an injunction previously issued by division A of the civil district court for the parish of Orleans, restraining the mayor of New Orleans, the chief of police, the several recorders of the city, the district attorney, the assistant district at-

torney, and the criminal sheriff for the parish of Orleans from arresting or instituting proceedings against relators for any violation of the provisions of said Act No. 18 until the further order of said civil district court.

"(2) Because said Act No. 18 of 1886, having been passed by the General Assembly in violation of the Constitutions of the United States and of the state of Louisiana, is not a valid law, and the alleged violation thereof by relators is not a crime, and cannot form the basis of a criminal prosecution against them. * * *

"What effect had the injunction issued by division A of the civil district court upon the jurisdictional power and authority of the criminal district court?

"We are bound to hold that it had none. The criminal district court derives its jurisdiction exclusively from the Constitution, and is in no manner subordinate to, or subject to the control of, the civil district court, which is vested with no power of any kind to curtail, extend, suspend, or regulate its actions in any case.

"It is proper to say that the judge of the civil district court, who issued this injunction, has not assumed, and never would have thought of assuming, to exercise any such power.

"His injunction is not addressed to the criminal district court or to the judges thereof. It is addressed to certain other public officers, who are vested with functions, not judicial, in the execution of the criminal laws of the state.

"The judge of the civil district court is not a party to this application, and we are not called upon to adjudge the validity or regularity of his proceedings.

"Conceding their validity, argumenti gratia, they do not concern, and are entirely inoperative upon, the respondent judge; and, so far as the district attorney is concerned, if he has violated the injunction addressed to him, the remedy is not found in appeal to our supervisory jurisdiction, but in a proceeding for contempt before the judge who issued the injunction.

"The power assumed by the judge of the civil district court is analogous to the jurisdiction exercised by courts of equity in enjoining proceedings at law. Such injunctions do not run against the courts of law or their judges, but only against the parties litigant therein. While they may be enforced by punitory measures against parties violating them, it is held that they are inoperative against the courts of law, and are without effect to oust their jurisdiction, restrain their proceedings, or avoid their judgments. High on Injunctions, § 46; Hill on Injunction, c. 6, p. 13.

"The ground of relief is therefore unfounded. "In the case of State ex rel. City of New Orleans v. Théard, Judge, 48 La. Ann. 1448, 21 South. 28, the Gambrinos Association alleged 'that the Sunday Law did not apply to said association in the sale of beer and refreshments at a picnic festival, and that a writ of injunction was necessary to protect them in their property rights,' but the court held 'that no court can enjoin the execution of a criminal law of the state or the officers upon whom devolves the duty from enforcing obedience to the law.'

"This doctrine was reaffirmed in Lecourt v. Gaster, 49 La. Ann. 487, 21 South. 646, and again in Sennette v. Police Jury, 129 La. bottom of page 732, 56 South. 653.

"And in Osborn v. Shreveport, 143 La. 932,[1] Mr. Justice Monroe, as the organ of the court, held 'that a Criminal Court in the exercise of its constitutional jurisdiction cannot be ousted thereof by an order of a civil court possessing no supervisory control over it,' and he adds 'that, before a criminal or a civil court is possessed with jurisdiction of a case involving both an offense and a property right, the possessor of the property right invaded by enforcement of a penal ordinance may enjoin the adverse litigant from taking it to a criminal court.' A judge is, of course, not a litigant, and if the litigant cares to take his case before a court of criminal jurisdiction, the extreme effect of a disregard of the injunction would be the punishment of the litigant. But it is a palpable absurdity to say that an injunction issued by one court against a litigant ousts another court of a jurisdiction lodged in it by the Constitution.

"And in the case of the Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570, relied on by relators, the court draws the distinction between the exercise of a jurisdiction by a court vested with that jurisdiction and the right to obtain injunction relief directed against a litigant proposing to institute criminal proceedings. Your honors will find it is clearly set out on page 621 of the quoted case (32 Sup. Ct. 345): 'In this there was no attempt to restrain a court from trying persons charged with crime, or the grand jury from the exercise of its functions, but the injunction binds the defendant not to resort to criminal procedure to enforce illegal demands.'

"It is therefore respectfully submitted that the application for prohibition made by relators be denied at their costs."

---

[1] 79 South. 542, 3 A. L. R. 955.

[1, 2] In the exercise of its supervisory jurisdiction over inferior courts conferred by article 94 of the Constitution, this court is not controlled by article 845 of the Code of Practice, but this supervisory jurisdiction cannot be exercised for the purpose of preventing a criminal court from trying a case regularly pending before it, of which it has jurisdiction, and simply for the reason that the legal question involved in the case has once before been passed on by the Supreme Court.

There is no denial that said prosecutions are regularly pending, and that the court of the respondent judge has jurisdiction of them.

The rule nisi herein is therefore recalled, and the present application is dismissed at the cost of the relators.

MONROE, C. J., dissents.

O'NIELL, J. (dissenting). The opinion submitted by Mr. Justice PROVOSTY for our consideration is, in my opinion, inconsistent with the argument made in the return of the respondent judge. In his answer to the rule issued herein, the judge attempts to justify his proceeding with the prosecution of the defendant upon the ground solely that this court has no supervisory jurisdiction to issue the writ of prohibition except in a case where the court complained of is without jurisdiction. In the opinion submitted by Mr. Justice PROVOSTY it is conceded that the supervisory jurisdiction of the Supreme Court to issue writs of prohibition directed to inferior courts under article 94 of the Constitution is not controlled by article 845 of the Code of Practice, and is therefore not confined to cases in which the court complained of is without jurisdiction.

The question presented in this case is not whether the criminal district court has exclusive original jurisdiction for the trial and punishment of parties accused of the violation of a criminal statute. The jurisdiction of the criminal district court in such case is not and cannot be denied. Nor can it be denied that the civil district court has jurisdiction to prevent by injunction the prosecution of a person accused of crime, under certain peculiar circumstances, and particularly when property rights are involved. See L'Hote v. City of New Orleans, 51 La. Ann. 93, 24 South. 608, 44 L. R. A. 90; McFarlain v. Town of Jennings, 106 La. 541, 31 South. 62; New Orleans Baseball & Amusement Co. v. City of New Orleans, 118 La. 230, 42 South. 784, 7 L. R. A. (N. S.) 1014, 118 Am. St. Rep. 366, 10 Ann. Cas. 757; Le Blanc v. City of New Orleans, 138 La. 243, 70 South. 212; Patout Bros. v. Mayor and Trustees of New Iberia, 138 La. 697, 70 South. 616; Osborne v. City of Shreveport, 143 La. 932, 79 South. 542, 3 A. L. R. 955; Crucia v. Behrman, Mayor, 147 La. 144, 84 South. 525; Davis & Farnum Manufacturing Co. v. Los Angeles, 189 U. S. 217, 23 Sup. Ct. 498, 47 L. Ed. 778; Daly v. Elton, 195 U. S. 242, 25 Sup. Ct. 22, 49 L. Ed. 177; High on Injunctions, 68; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570.

In the injunction suit now pending in the civil district court, relators aver, not only that they have important property rights involved, but also that the manner in which the betting on horse races is done at their place of business and amusement is not a violation of the statute in question, and that it has been so decided by this court in the case of State v. Austin, 142 La. 384, 76 South. 809, and in the case of State v. McBride (No. 24435) 91 South. —,[2] in which the court inferentially sustained the former decision. Relators also pleaded in their injunction suit that, if the statute could be construed so as to apply to the method of betting com-

[2] 150 La. —.

plained of, the law would, for reasons set forth in their petition, be unconstitutional.

In New Orleans Baseball & Amusement Co. v. City of New Orleans, supra, this court said:

"Where property rights will be destroyed or greatly impaired, interference by criminal proceedings under a void law or ordinance may be reached and controlled by a court of equity."

We are not now called upon to decide, nor was the judge of the criminal district court called upon to decide, whether the civil district court had jurisdiction to issue the temporary writ of injunction restraining the district attorney from prosecuting the defendants herein. That authority has not yet been challenged in the court in which it ought to be challenged, if challenged at all— that is, in the court that issued the writ. It is sufficient for us to know, and was sufficient for the criminal district court to know, that the case was one in which the civil district court might have had jurisdiction. Without deciding the question whether the civil district court really had jurisdiction under the circumstances, the allegations of fact on which the writ issued are pertinent to the present discussion. Relator has an investment of about three-quarters of a million dollars, consisting of a race track with the necessary buildings and appurtenances, in the city of New Orleans, the net proceeds of the business exceeding $60,000 a year. Their profits are made during the racing season, which lasts about a month and a half each year. During the remainder of the year, the enormous capital invested remains idle. Thousands of men and women, some of very high standing, attend and bet upon the races every day, except on the Sabbath, during the racing season. This was going on, even in a manner which might now be violative of the statute, from time immemorial until the statute of 1908 was enacted; and it has since been going on in a manner which relators contend, and which they say this court has twice decided, is not violative of the statute. Under these circumstances, the writ of injunction was applied for and granted, upon the allegation, substantially, that the district attorney intended to cause the arrest and prosecution of all persons who indulged in the betting on horse races in the manner in which it is done at relator's race track, and that such wholesale arrests and prosecutions at the beginning of a brief carnival of racing would break up relator's business and cause them serious financial loss.

Under these circumstances, my opinion is that it was the duty of the district attorney and of the judge of the criminal district court to respect the decree of the civil district court. The remedy of the district attorney was to apply to the civil district court for a dissolution of the temporary writ of injunction, and, if he should have failed at that, to apply to the Supreme Court for the exercise of its supervisory jurisdiction, if he thought the civil district court was without jurisdiction to issue the writ.

It is true the judge of the criminal district court was not a party defendant in the injunction suit; but his attention was called to the decree of the civil district court in the motion of the defendants for a continuance of the case. In respect for the comity of courts, my opinion is that the judge of the criminal district court should have respected the decree of the civil district court; for it cannot be disputed that the case is one in which the jurisdiction of the two courts may be concurrent or overlapping. What the criminal district court proceeded to do was to aid and abet the district attorney in his violation of the decree of the civil district court; and the only reason given in justification for such aiding and abetting is that the civil district court can punish the district attorney for his contempt, if he should be held in contempt, of the decree of

the civil district court. The argument is, in other words, that the pound of cure may eventually serve the purpose of the missing ounce of preventative.

The argument of the respondent judge that "the granting of the relief prayed for by relators would completely paralyze the administration of justice and could prevent the trial of the murderer, the forger, the embezzler or the ravisher," is neither a persuasive argument nor an apt illustration. The purport of the argument is that the civil district court should not have equity jurisdiction to prevent a prosecution for crime in any case, because the court might abuse its power. The argument assumes that, if the judge of the criminal district court had respected the decree of the civil district court in this case, the latter court might be tempted hereafter to prevent the trial of a murderer, a forger, an embezzler or a ravisher, or some other criminal having no property right involved in the case. If we are to deal in illustration and analysis, let us take the case before us for illustration. Suppose this court should eventually hold that the civil district court did have jurisdiction to issue the temporary writ of injunction, and suppose we should eventually perpetuate the writ. Suppose, too, that the district attorney had, in the meantime, caused the arrest and prosecution of all persons who bet on the horse races during the racing season, and suppose the district attorney had thereby deprived the relators of a return on their enormous investment and had wrecked their business. And suppose, finally, that this court had ultimately decided, as in the Case of Austin and in the Case of McBride, that the method of betting was not condemned by the statute of 1908, or decided that the statute was unconstitutional. What satisfaction would it be to' say that the district attorney should then be punished for contempt for his violation of the decree of the civil district court?

My opinion is that the case is peculiarly one in which the judge of the criminal district court should' not have aided the district attorney in his violation of the decree of the civil district court; and we all agree that this court has supervisory' jurisdiction in the premises. For these reasons, I respectfully dissent from the opinion and decree submitted by Mr. Justice PROVOSTY.

### On Rehearing.

LAND, J. This case having been further considered, and the court being convinced that its former judgment is correct, for the reasons assigned in its original opinion, it is now ordered that said opinion be adopted as the opinion of this court on rehearing, and that its former judgment be reinstated as the judgment of this court.

The CHIEF JUSTICE concurs in the dissenting opinion heretofore handed down by Mr. Justice O'NIELL.

O'NIELL, J., adheres to his dissenting opinion.